IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 623-003 |
| | ) | |
| DARRELL LAMAR WILLIAMS | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The Indictment charges Defendant with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).  (Doc. no. 1.)  Defendant seeks suppression of a handgun found on a footpath where police pursued him after he fled a traffic stop and caused a high-speed chase.  After careful consideration of the briefs and evidence presented at the hearing, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**.  (Doc. nos. 21, 36.)

**I.    BACKGROUND**

On June 30, 2022, Georgia State Patrol Trooper Aaron DiGiacomo pulled Defendant over in Claxton, Georgia, for failing to wear a seatbelt while driving.  (Doc. no. 33, Transcript, "Tr." at 4-5.)  When Trooper DiGiacomo walked up to Defendant's car, he briefly smelled marijuana.  Tr. at 7.  However, once Defendant rolled his windows down, the odor dissipated. Tr. at 7, 31-33.  Remaining in his car, Defendant admitted he was driving without a seatbelt and provided his name and date of birth, but he did not have his driver's license with him.  Tr. at 8.  Trooper DiGiacomo returned to his patrol car to check Defendant's personal and vehicle information and call for backup and a drug dog to investigate the smell of marijuana.  Tr. at 8-

9, 39. Trooper DiGiacomo testified he performed these tasks simultaneously. Tr. 17, 30; (see Dash Camera, doc. no. 21, Ex. 2, ("DC"), 02:45-03:08.)

A computer search revealed a valid driver's license associated with Defendant's name and date of birth but no picture to verify Defendant's identity. Tr. at 9. Also, an automated warning popped up during the search showing multiple active felony warrants for a similarly named "*Darnell* Williams" with the same date of birth as Defendant. Tr. at 9, 39-42; DC 03:14-03:34. Darnell Williams was wanted for terroristic threats and acts, stalking, family violence, obstruction, disorderly conduct, open container violations, and possession of marijuana. (Doc. no. 21, Ex. 1, p. 7.) Though Darnell Williams was already in custody, the search results did not reveal this, and Trooper DiGiacomo did not know of his custodial status. Tr. at 42-43.

Trooper DiGiacomo knew the name Darnell Williams and was aware he had a twin, realizing that to be Defendant *Darrell* Williams. Tr. at 9, 42. However, Trooper DiGiacomo also heard from local police officers that Darnell and Darrell were known to use each other's names when stopped by law enforcement. Tr. at 9-10. Trooper DiGiacomo checked Defendant's information again using a different database but was still unable to find a photo to verify Defendant was not his twin. Tr. at 10. Instead, he resolved to use a fingerprint scanner to identify Defendant. Tr. at 10, 18, 43. Approximately four minutes elapsed in the traffic stop by this point, and Trooper Erik Lawrence had already arrived with a drug dog. Tr. at 8; DC 00:24-4:30.

Trooper DiGiacomo twice ordered Defendant to exit his car and approach the patrol car. Tr. at 11; DC 04:26-04:40. The troopers needed Defendant to come to the patrol car to ensure the fingerprint scanner maintained its connection with the computer in the patrol car.

Tr. at 18.  Defendant opened his car door and questioned why he needed to exit, then closed the door without getting out.  Tr. at 11; DC 4:29-04:44.  Trooper DiGiacomo testified at that time he heard Defendant's engine rev.  Tr. at 11, 18-19, 36; DC 04:42.  Trooper DiGiacomo continued to repeatedly tell Defendant to approach but returned to his patrol car in anticipation of a chase.  Tr. at 11, 19; DC 4:29-04:50.  Defendant opened his door again to ask if he did anything wrong.  Tr. at 11; DC 04:45- 4:50.  Trooper DiGiacomo then heard the engine rev a second time.  Tr. at 11, 36-39; DC 04:49.  However, Defendant exited his car and walked toward the troopers.  Tr. at 11; DC 04:50-05:00.

Because Defendant was walking in the lane of traffic, Trooper DiGiacomo directed him to move in front of the patrol car.  Tr. at 9; DC 05:00-05:05.  Defendant did not comply and asked what he did wrong.  Tr. at 13, 52-53; DC 05:01-05:05.  Trooper DiGiacomo again directed him to move to the front of the patrol car, but Defendant held up his hands, said he did not do anything wrong, and slightly moved backwards.  Tr. at 12-13, 45-47, 52-53; DC 05:05-05:06.  Because Defendant was repeatedly not complying with instructions and "giving all the indicators that he was about to flee," both troopers grabbed Defendant to handcuff him and, at that same moment, Defendant finally began moving toward the patrol car as initially ordered.  Tr. at 13, 44-45, 47-48; DC 05:05-05:08.  As soon as the troopers touched him, Defendant fought back, and the troopers forced Defendant to bend over the hood of the car. Tr. at 13, 45, 54; DC 05:08-05:10.

During the struggle, Trooper Lawrence disengaged to make sure his drug dog did not bite Defendant.  Tr. at 14; DC 05:10-05:19.  Consequently, Defendant was able to escape from Trooper DiGiacomo's grip and back away to his car yelling, "I'm not resisting!"  Tr. at 15; DC 05:19-05:24.  Defendant turned to get into the car, and Trooper DiGiacomo unsuccessfully

attempted to tase him.  Tr. at 15; DC 05:24-06:26.  Defendant sped away, driving recklessly at approximately 70 mph in a 35 mph residential zone.  Tr. at 15; DC 05:26-06:32.

The troopers and other officers pursued Defendant in a high-speed car chase that ended when Defendant abandoned his moving car and fled on foot into the woods.  Tr. at 15-16; DC 05:26-06:32.  While in foot pursuit, Trooper DiGiacomo saw a handgun fall from Defendant's person, which Defendant now moves to suppress.  Tr. at 16.  Defendant was apprehended shortly thereafter.  Tr. at 14.

## II.   DISCUSSION

Defendant argues the troopers violated his Fourth Amendment rights by unlawfully delaying the traffic stop to investigate drug crimes and attempting to arrest him without probable cause.  (Doc. no. 21, pp. 7-15; doc. no. 36.)  Suppression is unwarranted because, as explained below, the troopers did not unlawfully prolong the stop, they had probable cause to arrest Defendant for obstruction of justice, and the series of dangerous and illegal actions by Defendant during the police chase provide an independent basis for his arrest and seizure of the firearm.

### A.   Troopers Did Not Unlawfully Prolong The Traffic Stop

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . ."  U.S. Const. Amend. IV.  The standard for reasonableness depends on the type of police-citizen encounter:  "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests."  United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011) (citing United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)).

A traffic stop is a seizure within the meaning of the Fourth Amendment. United States v. Campbell, 26 F.4th 860, 880 (11th Cir.), *cert. denied*, 143 S. Ct. 95 (2022). Further, because "a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest[, and] [t]herefore, we analyze the legality of these stops under the standard articulated in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (citations omitted). The reasonableness of an investigative Terry stop turns on two inquiries: (1) whether the stop was reasonable at its inception, and (2) whether the stop became unreasonable in scope or duration. See United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006); see also United States v. Acosta, 363 F.3d 1141, 1144-45 (11th Cir. 2004). Considering scope and duration, an officer "cannot unlawfully prolong a stop." Campbell, 26 F.4th at 881; Rodriguez v. United States, 575 U.S. 348, 354-55 (2015). "[T]o unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion" of those other crimes. Campbell, 26 F.4th at 884.

Here, the traffic stop was reasonable at its inception because Defendant admittedly failed to wear a seatbelt in violation of O.C.G.A. § 40-8-76.1. The stop was also reasonable in duration. Defendant did not have his driver's license with him, so Trooper DiGiacomo had to fingerprint Defendant to determine whether he had an active warrant. "[P]olice officers conducting a traffic stop may prolong the detention to investigate the driver's license and the vehicle registration" and "while waiting for the results of a criminal history check that is part of the officer's routine traffic investigation." United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (internal quotations omitted); Rodriguez, 575 U.S. at 355.

5

While Trooper DiGiacomo did request a drug dog during the period of time he was conducting the inquiry into Defendant's identification, the request did not add any time to the traffic stop. Trooper DiGiacomo's unrefuted testimony shows the request was made while simultaneously checking Defendant's identification. Tr. at 30; United States v. Forget, 853 F. App'x 534, 539 (11th Cir. 2021) (*per curiam*) (finding unrelated inquiry did not unlawfully prolong traffic stop because it occurred simultaneously with officer's inquiries into driver's identification), *cert. denied*, 142 S. Ct. 471 (2021).

Regardless, Trooper DiGiacomo had reasonable suspicion to prolong the stop to conduct an unrelated inquiry into marijuana possession. Trooper DiGiacomo testified he briefly smelled marijuana as he approached the car. The Court finds this testimony credible. Trooper DiGiacomo has been in law enforcement for thirteen years, and his testimony is consistent with his contemporary observations recorded during the stop and memorialized in the incident report. Furthermore, Trooper DiGiacomo candidly admitted the smell of marijuana did not linger, and in fact dissipated after Defendant rolled down the windows of his car. See Tr. at 6; (doc. no. 21, Ex. 1, pp. 6-7); United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) ("Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." (citation omitted)).

It is well-established the smell of marijuana provides an officer reasonable suspicion to prolong a stop. See United States v. Cheeks, 795 F. App'x 805, 811-12 (11th Cir. 2019) (*per curiam*) (holding smell of marijuana provides reasonable suspicion to justify extension of traffic stop to investigate drug crimes); United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010) (explaining "the smell of marijuana alone may provide a basis for reasonable suspicion for

6

further investigation of possible criminal conduct"). In fact, the Eleventh Circuit has consistently held the odor of marijuana "emanating from a vehicle is *sufficient probable cause to search a vehicle*." Merricks v. Adkisson, 785 F.3d 553, 560 n.3 (11th Cir. 2015) (emphasis added); United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982) (finding it has been "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search"). Trooper DiGiacomo clearly had reasonable suspicion to prolong the traffic stop to conduct this unrelated inquiry. Accordingly, Defendant's Fourth Amendment rights were not violated by the duration or scope of the traffic stop.

### B. The Attempted Arrest of Defendant Was Supported by Probable Cause

Trooper DiGiacomo testified he and Trooper Lawrence were attempting to arrest Defendant for obstruction of justice at the time of the physical struggle because Defendant failed to comply with their orders. See Tr. at 44-45, 48. Defendant contends the troopers lacked probable cause to conduct an arrest.

Probable cause to conduct a warrantless arrest exists "when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018)). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). These probabilities need not come from direct observation but may be inferred from the particular circumstances. United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990). Probable cause may also be based on evidence that

7

would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311-12 (1959). "[P]robable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts." Gates, 462 U.S. at 232.

The Court finds the troopers had probable cause to arrest Defendant for misdemeanor obstruction under O.C.G.A. § 16-10-24(a). "A person commits the offense of obstruction of an officer when he knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." Cofield v. State, 695 S.E.2d 696, 698 (Ga. 2010). "Argument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element." Pinchon v. State, 516 S.E.2d 537, 538 (Ga. Ct. App. 1999).

"Under certain circumstances, words alone can constitute obstruction," like, for example, when "the defendant's words affirmatively interfered with the officers' actions." Lebis v. State, 760, 808 S.E.2d 724, 734 (Ga. 2017) (citing Stryker v. State, 677 S.E.2d 680 (Ga. Ct. App. 2009) and Harris v. State, 726 S.E.2d 455 (Ga. Ct. App. 2012)); see WBY, Inc. v. DeKalb Cnty., Ga., 695 F. App'x 486, 493 (11th Cir. 2017) (*per curiam*) (explaining obstruction requires words "plus something more," like threatening behavior or refusal to comply with officer's directive (citing Harris, 726 S.E.2d at 458)); Turner v. Jones, 415 F. App'x 196, 199 and n.2 (11th Cir. 2011) (*per curiam*) (listing conduct constituting obstruction and explaining "it is now clear that, under Georgia law, verbal exchanges without threats of force and violence can authorize a conviction under the misdemeanor obstruction statute.") (internal quotations and citations omitted)). Further, the Georgia Court of Appeals has explained "the misdemeanor obstruction statute 'was made purposefully broad to cover actions which might not be otherwise unlawful . . . .'" Harris, 726 S.E.2d at 458 (citing Hudson v. State, 218 S.E.2d 905 (Ga. Ct. App. 1975)); see also Maryland v. Pringle, 540 U.S. 366, 370

8

(2003) ("A warrantless arrest of an individual . . . for . . . a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

Trooper DiGiacomo twice ordered Defendant to exit his car and approach the troopers standing by the patrol car. Defendant opened his car door and questioned why he needed to exit, closed the door without getting out, and revved his engine. Defendant disputes he revved the engine because no such sound was heard in the dash camera footage. However, the Court finds Trooper DiGiacomo's testimony credible, as explained previously. Suspicious that Defendant would flee, Trooper DiGiacomo continued to repeatedly tell Defendant to approach the patrol car. Defendant opened his door again to ask if he did anything wrong, then revved the engine a second time.

When Defendant finally exited his vehicle and walked toward the patrol car, he was walking in the lane of traffic, and Trooper DiGiacomo directed him to move in front of the patrol car. Defendant did not comply and asked what he did wrong. Trooper DiGiacomo again directed him to move to the front of the patrol car, but Defendant held up his hands, said he did not do anything wrong, and slightly moved backwards. Because Defendant was repeatedly not complying with instructions and giving indications of flight, both troopers grabbed Defendant to handcuff him. Defendant complied momentarily by moving toward the patrol car, but immediately and intensely fought back when the troopers made contact.

A reasonable officer in these circumstances would find Defendant was knowingly and willfully hindering or obstructing the lawful discharge of the troopers' duties in violation of O.C.G.A. § 16-10-24(a). Indeed, Defendant's actions evidenced much more than a mere "probability or substantial chance of criminal activity." Wesby, 138 S. Ct. at 586. It is difficult

9

to imagine a reasonable officer concluding otherwise in light of the clear disrespect, disobedience, and willful defiance exhibited by Defendant throughout the traffic stop. Therefore, at the time the troopers initiated the attempted arrest, there was probable cause to believe Defendant had committed and was continuing to commit violations of O.C.G.A. § 16-10-24(a).[1]  Probable cause continued when Defendant removed any doubt of his intentions by fighting back and fleeing the scene.  See, e.g., Panzner v. State, 616 S.E.2d 201, 202 (Ga. Ct. App. 2005) (holding that fleeing and forcibly resisting arrest constitutes felony obstruction).

For the sake of completeness, the Court further finds that, even in the absence of probable cause, the troopers were fully justified in attempting to handcuff Defendant as a reasonable and necessary safety measure while performing the Terry stop.  The Supreme Court has found seizures can remain within the scope of Terry even when officers "take reasonable steps to ensure their safety so long as they possess 'an articulable and objectively reasonable belief that the suspect is potentially dangerous.'" Acosta, 363 F.3d at 1146 (quoting Michigan v. Long, 463 U.S. 1032, 1047-48 (1983)); Graham v. Connor, 490 U.S. 386, 396 (1989) ("[An]

---

[1] See Timberlake v. State, 727 S.E.2d 516, 517-18 (Ga. App. 2012) (finding obstruction when defendant initially refused to stand outside lane of traffic, did not return to vehicle when asked, argued with officer, and hindered officer's attempts to see if he was armed); West v. State, 673 S.E.2d 558, 561-62 (Ga. App. 2009) (finding obstruction when defendant refused repeated orders to leave scene after woman called 911 claiming he was following her), *overruled on other grounds*, Worthen v. State, 823 S.E.2d 291 (Ga. 2019); Wilson v. State, 607 S.E.2d 197, 199 (Ga. App. 2004) (finding obstruction against first officer when defendant refused a pat down during traffic stop and fought back first officer's attempts to subdue defendant after he punched second officer); Leckie v. State, 500 S.E.2d 627, 628 (Ga. App. 1998) (finding obstruction when defendant, "after being advised he was under arrest [for disorderly conduct], announced he was not going to jail, purposefully turned away from the officer and attempted to avoid being handcuffed"); see also Arsenault v. State, 571 S.E.2d 456, 458 (Ga. App. 2002) ("Refusing to obey lawful commands of an officer who is seeking to protect his safety will sustain a conviction under this statute.").

investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). To determine whether a seizure remained within the scope of a Terry stop or matured into a de facto arrest requiring probable cause, courts examine "(1) the law enforcement purpose served by the detention; (2) the diligence with which the officers pursued the investigation; (3) the scope and intrusiveness of the investigation; and (4) the duration of the detention." Street, 472 F.3d at 1306; Acosta, 363 F.3d at 1145-46.

The troopers were diligent in their handling of the initial traffic stop and only attempted to handcuff Defendant after he became belligerent and noncompliant and engaged in behavior suggestive of a flight attempt. Such reasonable protective measures during a Terry stop are permissible for safety purposes and do not convert that Terry stop into a de facto arrest requiring probable cause.[2]

> **C. Even if Troopers Violated the Fourth Amendment, Defendant's Dangerous and Illegal Flight From the Traffic Stop Was an Intervening Act That Provided Probable Cause for the Second Arrest and Seizure of the Firearm**

Suppression of the firearm is not warranted even if the troopers' first attempted arrest of Defendant was unlawful. "[T]he exclusionary rule encompasses both the primary evidence

---

[2] See, e.g., Acosta, 363 F.3d 1147-48 (collecting cases); United States v. Gil, 204 F.3d 1347, 1351 (11th Cir. 2000) (allowing seventy-five-minute detention while suspect handcuffed in back of squad car); United States v. Diaz-Lizaraza, 981 F.2d 1216, 1221 (11th Cir. 1993) (finding requesting identification, patting down suspect, and pointing weapon at suspect were reasonable protective measures); Coleman v. Town of Brookside, Alabama, No. 2:22-CV-00423-RDP, 2022 WL 16540076, at *4 (N.D. Ala. Oct. 28, 2022) ("Police may handcuff a detainee during an investigatory stop when they reasonably believe that doing so is necessary to 'protect themselves' or 'maintain the status quo.'" (quoting United States v. Kapperman, 764 F.2d 786, 790 n.4 (11th Cir. 1985)); cf. United States v. Johnson, 752 F. App'x 771, 773 (11th Cir. 2018) (finding probable cause to arrest under Alabama's disorderly conduct statute justified officer's decision to handcuff suspects, though officer stated he only handcuffed suspects for safety purposes during search).

obtained as a direct result of an illegal search or seizure and, relevant here, evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree.'" Utah v. Strieff, 579 U.S. 232, 237 (2016) (internal quotations omitted). However, evidence is admissible "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance . . . ." Id.; Wong Sun v. United States, 371 U.S. 471, 484 (1963).

Non-exhaustive factors to consider when determining whether the evidence was the product of illegal police action include (1) the temporal proximity of the illegal conduct and the evidence, (2) the presence of intervening circumstances, and (3) the purpose or flagrancy of the police misconduct. See Brown v. Illinois, 422 U.S. 590, 603-04 (1975); Strieff, 579 U.S. at 233. The Eleventh Circuit has cautioned not to "allow a factor-based analysis to obscure the underlying question, which 'generally involves a pragmatic evaluation of the extent to which the illegal police conduct caused the defendant's response.'" United States v. Delancy, 502 F.3d 1297, 1309 (11th Cir. 2007) (quoting United States v. Bailey, 691 F.2d 1009, 1013 (11th Cir. 1982)). In the specific context of tossed-away or abandoned evidence such as the case here, courts have explained "if abandonment of evidence was induced by an illegal seizure, the abandoned evidence could be considered fruit of the unlawful seizure and would be excluded." United States v. Chappell, 261 F. Supp. 3d 1202, 1205-06 (M.D. Ala. 2017); United States v. Beck, 602 F.2d 726, 730 (5th Cir. 1979).[3]

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The outcome here is controlled by the Eleventh Circuit's decision in United States v. Bailey, wherein the defendant fled an illegal arrest by DEA agents in violation of 18 U.S.C. § 111, which prohibits assaulting, resisting, or interfering with a federal officer performing official duties. 691 F.2d at 1012. Considering the factors in Brown *supra*, the Court held "notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime." Id. at 1016-17; see also United States v. Allen, 619 F.3d 518, 526 (6th Cir. 2010) ("[T]he act of fleeing from police officers constituted a new, distinct crime that rendered evidence subsequently seized admissible."); United States v. Sprinkle, 106 F.3d 613, 619 (4th Cir. 1997) ("[A] new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest."); United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995) ("[A] defendant's response to even an invalid arrest or Terry stop may constitute independent grounds for arrest.").

As the Eleventh Circuit explained, "[A] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Bailey, 691 F.2d at 1017. Indeed, "extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct." Id.

Here, it is undisputed Defendant committed new and dangerous crimes in response to the attempted arrest in violation of many Georgia traffic laws, including, without limitation, O.C.G.A §§ 40-6-181(a), 40-6-390, and 40-6-395. During the police chase, Defendant drove

on wet roads at speeds in excess of 70 mph in a 35 mph speed zone while in his own lane of traffic and in the emergency lane, followed another vehicle too closely, passed vehicles despite oncoming traffic and double solid yellow lines, made a sudden right turn without signaling, ran a stop sign, and fled his vehicle while it was still moving.  See DC 05:26-07:00; (doc. no. 21, Ex. 1, pp. 7-8).

As the Northern District of Georgia concluded in a similar context, Defendant "had no right, even if the initial attempted [arrest] was unlawful, to lead police on a high-speed chase in an attempt to elude capture.  He engaged in additional criminal conduct, which this Court readily concludes gave police probable cause to arrest him."  United States v. Mobely, No. 116CR145TWTJKL6, 2017 WL 10574358, at *7 (N.D. Ga. Oct. 26, 2017), *adopted by* 2018 WL 5077755 (N.D. Ga. Oct. 18, 2018).

Applying the Brown factors, the Court first finds the connection between the allegedly illegal arrest attempt during the initial traffic stop and seizure of the firearm is remote and was interrupted by the intervening circumstance of the police chase.  Brown, 422 U.S. at 603-04.  Second, consistent with the reasoning in Bailey, the temporal proximity of the arrest attempt and seizure of the firearm is outweighed heavily by the intervening circumstances of Defendant's reckless and highly dangerous driving.  The third factor weighs against Defendant as well because, as explained previously, the first attempt to arrest Defendant falls far short of flagrant police misconduct.  On the contrary, the troopers reasonably concluded an arrest was necessary in light of Defendant's repeated refusals to comply with their lawful orders.  Accordingly, the firearm discovered during the pursuit should not be suppressed even if the troopers violated Defendant's Fourth Amendment rights by attempting to arrest him for obstruction of justice.

Defendant argues he had a right under Georgia common law to flee the scene of an illegal arrest. See, e.g., Glenn v. State, 849 S.E.2d 409, 418, 423 (Ga. 2020); State v. Newton, 489 S.E.2d 147, 150 (Ga. Ct. App. 1997). The issue is irrelevant because, as Bailey teaches, any illegality in the officers' conduct did not give Defendant carte blanche authority to commit new crimes during his flight.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**. (Doc. nos. 21, 36.)

SO REPORTED and RECOMMENDED this 1st day of August, 2023, at Augusta, Georgia.

*[signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA